## Asa U. Sutton v. Daniel Hanford and another.

A clause in a general assignment for the benefit of creditors, which authorizes the assignee to sell the assigned property on credit, renders the assignment fraudulent and void in law.

*Heard May 27th and 28th. Decided July 17th.*

Error to Lenawee Circuit.

Sutton brought action against defendants in error for certain property covered by a general assignment made to him by the firm of J. C. Satterthwaite & Co., for the benefit of their creditors. Defendants held the property under executions against the assignors, and they claimed the assignment to be fraudulent, for the reason, among others, that it allowed a sale of the assigned property on credit. The clause for this purpose was as follows: "And the said party of the second part is hereby authorized * * * to sell any of the aforesaid property on reasonable short credit, if need be to prevent an unreasonable sacrifice of the same, or if the same can be sold on credit in such manner as best to serve the interest of said creditors of said first parties." The Court below held the assignment void, and Sutton brought error.

*C. A. Stacy* and *T. M. Cooley*, for plaintiff in error:

The doctrine that a clause allowing sales on credit avoids the assignment, rests substantially on the New York decisions. But in New York such a clause was deemed unobjectionable prior to the decision of *Meacham v. Stearns*, 9 *Paige*, 398. A sentence in the opinion carelessly quoted and misapplied afterwards has led to the rule in question. 7 *Paige*, 273; *Burr. on Assts.* 211.

That the rule has since been maintained in New York we do not deny. This is doubtless due mainly to two circumstances.

1. The New York courts have never been satisfied with the law allowing assignments with preferences, and have

omitted no occasion to attack the principle upon which they are upheld, and to invent unfounded pretences for disregarding it.

2. The other circumstance doubtless is that questions with respect to assignments in New York arise in a class of cases which may be called exceptional; and that a reason exists there for denying credit which does not prevail in the country.

New York is the great commercial metropolis. Assignments in the great majority of cases are of stocks of goods which there can be best sold at a speedy and public cash sale. A power to sell such property on credit is susceptible of abuse, and it is probably true that a cash sale at auction would best subserve the interest of creditors in most cases of a mercantile crash.

Far different is it when a farmer, a mechanic, a miller, even a merchant fails in the country. A forced cash sale of his property is utterly ruinous to both debtor and creditor. Real estate can not be sold for cash to advantage. Such a sale is against the custom of the country. Every one knows that even horses, cattle, farming or mechanical implements are best sold on reasonable short credit. Rarely indeed can even a stock of goods be sold to advantage at a forced cash sale.

A large concourse of bidders can not be got in the country. A purchaser must be found who will take the property in gross on credit; and that assignee, who would force a sale at cash, might reasonably expect to be called to account before a court of equity for a violation of his trust.

The rule against credit, then, is a rule which the supposed interests of a mercantile community have led its courts to adopt as an innovation upon a common law rule which subserves far better the general interests of the country at large.

But in principle the New York doctrine has no foundation whatever.

It would seem to be very clear that if the assignee has power to sell on credit without special authority being given, a clause allowing him to do what the law itself allows, must be, to say the least, a perfectly innoxious, because inoperative clause. Yet the overwhelming weight of authority recognizes such a power: — 7 *Paige*, 272 ; 5 *Ohio St.* 137 ; 4 *Pick.* 57 ; 1 *Met.* 79 ; 21 *Pick.* 187 ; 1 *Morris (Iowa)*, 296 ; 11 *Grat.* 776 ; 13 *Md.* 164, 179.

But the N. Y. decisions appear to rest upon this idea : The authority to sell on credit given by the assignor is a special power, vested in his discretion. No court can control him in the exercise of this discretion ; consequently he has an uncontrollable power to operate to the disadvantage of the creditors. The creation of any such special power must therefore be regarded as evidence of an intent on the part of the assignor to defraud :--17 *N. Y.* 19 ; 19 *N. Y.* 520.

But the courts of N. Y. have frequently sustained such special powers. See 11 *Barb.* 198 ; 21 *Barb.* 65 ; 21 *Barb.* 128 ; 2 *Seld.* 511 *and* 522 ; 1 *Kern.* 304 ; 3 *Kern.* 215 ; 19 *Barb.* 176 ; 15 *Barb.* 618 ; 9 *Barb.* 255 ; 8 *How. Pr.* 468. See also the special power in *Nye v. Van Husan*, 6 *Mich.* 345-6-7 ; *Hollister v. Loud*, 2 *Mich.* 321.

So in N. Y. it has been repeatedly held that equity might control the assignee in the execution of the power. 7 *Paige*, 37 ; 19 *N. Y.* 522.

The power of equity to call assignees to account is undoubted. *Burr.* 463, 550.

And to appoint a new trustee if the one selected fails to act, or for any other reason it becomes necessary : — 5 *Paige*, 46 ; *Burrill*, 307 ; 17 *Barb.* 392 ; 19 *Barb.* 177.

And any trustee, though the power be clearly vested in his judgment or discretion as to the management of the trust estate, may be compelled by equity to a reason-

able exercise of judgment or discretion.    See *Hill on Trustees*, 743; 22 *Ala.* 243; 2 *Mich.* 321–2; 7 *Ves.* 487; 3 *Hare*, 249 ; 6 *Ohio St.* 611; 26 *Ill.* 27.

But if we examine the doctrine of the N. Y. courts closely, we shall find it leading to conclusions positively startling in their character.  Thus, they have held the following powers valid :

To fix the time of sale.

To fix the terms of sale.

To sell for cash exclusively.

Now if these powers rest wholly in the discretion of the assignee, and that discretion is entirely uncontrollable, it is easy to see that the most enormous frauds might be perpetrated by assignees, under the forms of law; and equity is powerless to interfere while the fraud is being carried on.

The N. Y. doctrine that an authority to sell on credit vitiates, is opposed to the clear weight of authority.  See 5 *E. L. and E.* 431; *Curtis' Conveyancer*, 44; *Ang. on Assignments*, 216; 9 *Port.* 566; 16 *Ala.* 560; 22 *Ala.* 243; 21 *Ala.* 333; 5 *Ohio St.* 124; 6 *Ohio St.* 611; 30 *Mo.* 33; 2 *Cal.* 113; 11 *Grat.* 778; 8 *Leigh*, 271; 11 *Humph.* 285; 15 *Md.* 63; 22 *Texas*, 724.

But if the N. Y. rule be correct, a distinction is made under it which clearly excepts the present case.  The distinction seems to be this:

If by the express terms of the assignment the assignee is vested with a power to be executed as in his discretion or his judgment he shall deem it best, this refers the whole matter to his judgment and discretion, and takes it from the control of the law.  It is then void.

But when the act to be done is not thus referred to the discretion of the assignee, the ordinary rules relative to assignees apply; the power is not then uncontrollable, but he is subject to the control of equity, and the assignment is valid.  See *Jessup v. Hulse*, 21 *N. Y.* 168.  Compare this with 17 *N. Y.* 16, 19, 20; 2 *Seld.* 518–526.

SUTTON *v.* HANFORD.

The whole question is thus made to turn on the point whether a simple authority is given, or a power vested in the assignee's discretion. The former is controllable by the courts, the latter not.

The power in the present case is not discretionary. It is "to sell any of the aforesaid property on reasonable short credit if need be to prevent an unreasonable sacrifice of the same, or if the same can be sold on credit in such manner as best to serve the interest of said creditors."

While therefore we do not admit the N. Y. doctrine as to uncontrollable powers, it is clear that this is controllable even within the decisions of that State.

The difference between a simple authority and a power vested in discretion will be best seen by observing the position of the assignee when he comes to account.

In the one case he must show that the circumstances justified what he has done. In the other it is sufficient for him to say: "I saw fit to do it. I thought it best to do it."

*C. I. Walker*, for defendants:

Upon principle, and the clear weight of authority, any power given to the assignee to sell upon credit, renders the assignment void, as it necessarily tends to delay, and thereby defraud the creditors. They are entitled to the immediate appropriation of the property. But if such a provision is valid, no court can enforce such immediate appropriation, nor restrain the power of the assignee thereunder, except in case of collusion or fraud: — 9 *Paige*, 405; 2 *Comst.* 371; 11 *Barb.* 198; 12 *Barb.* 168; 2 *Seld.* 510; 5 *Seld.* 151; 3 *Kern.* 219.

There are other cases in New York, not directly upon this point, but so closely connected therewith that they illustrate the views of the courts of that State upon this subject, and for that purpose we call attention to them:— 9 *Barb.* 255; 21 *N. Y.* 171; 17 *N. Y.* 9.

The principle of these New York cases has been followed in 24 *Ill.* 260; 1 *Wis.* 286; 2 *Ibid.* 42; 8 *Ibid.* 187; 26 *Vt.* 462; 28 *Vt.* 465.

And seems to be recognized in *Am. Ex. Bank v. Inloes,* 7 *Md.* 390; *Inloes v. Am. Ex. Bank,* 11 *Ibid.* 182.

But there are peculiarities in the conditions of this assignment upon the subject that demand our attention.

The assignee is authorized to sell this property on "reasonable short credit." This reasonable credit must, of course, have reference to the kind of property, and the ordinary mode of selling that property on credit.

Under this provision would not the assignee be authorized to sell this real property upon a credit for a term of years, and to secure the payment by taking a mortgage thereon, or even sell without security? If he has such a right by the assignment, no court can control its exercise, unless there be fraud or collusion:—2 *Seld.* 520; 17 *N. Y.* 19; 12 *Barb.* 173.

But again, there are two grounds upon which the assignee is thus authorized to sell the property.

1st.  " To prevent an unreasonable sacrifice of the same."

2d.  " If it will best serve the interest of the creditors."

Now, it is clear from this provision, that, irrespective of the interest of the creditors, and solely with reference to the interest of the assignors, and the increase of their surplus, the assignee was empowered to sell this property upon credit.

We submit that it is too clear for argument that, even if in any case an assignee can be authorized to sell upon credit, such authority could not be given for the mere purpose of preventing a sacrifice of the property:— 2 *Mich.* 445; 2 *Seld.* 520; 3 *T. B. Monr.* 1; 21 *N. Y.* 25; 1 *Sandf. Ch.* 4.

MANNING J.:

The first objection to the validity of the assignment is, that it authorizes the assignee to sell the assigned property on credit. We think this objection is well taken.

SUTTON v. HANFORD.

Assignments by insolvent debtors for the benefit of creditors, are binding on the latter, when made by the debtor for the purpose of converting his property into money to pay his creditors. When the assignee goes farther than this, and stipulates for, or authorizes, the assignee to do some act for his · personal gain, or unnecessarily postpones the payment of his creditors without their assent, the assignment can not be sustained as against them without encroaching on the statute against fraudulent conveyances.

In authorizing the assignee to sell on credit, the assignor not only exposes what he professes to give up to his creditors to a loss — a hazard incident to credit—but, to the extent of the credit given, hinders and delays them in the collection of their just dues. If he may authorize a sale on credit, may he not also authorize the assignee not to sell, or to hold on to the property for a given period of time, unless it can be sold at a certain price? If he may make the assignee a trustee for any other purpose than the one above stated, what power may he not give him? and how long may the payment of creditors be delayed?

There is some force, we admit, in the argument that real estate—for there is much of it embraced in the present assignment—will ordinarily bring a higher price when sold on credit than when sold for cash. But in law this is not a sufficient consideration to support the clause under discussion. Execution and mortgage sales are for cash, and not on credit, and the interest and relations of debtor and creditor are the same in those cases as in the one before us. We see no good reason why a credit should be given in one and not in the other.

What was the object of the assignor? If it was the liquidation of a greater amount of his indebtedness, it was for a personal benefit to himself. If, on the other hand, it was to prevent a sacrifice of the property to the detri-

SUTTON v. HANFORD.

ment of his creditors, it is a trust not necessary for that purpose, and depriving the creditors of the right of electing for themselves — forced upon them by their debtor — for there can be no doubt that without the credit clause in the assignment the assignee may sell on a credit with the assent of all the creditors. That all the creditors do not consider a sale on credit beneficial to them is evident from the present suit.

Conveyances made to hinder or delay creditors, as well as to defraud them, are declared void by the statute. The delay incident to an assignment made in good faith does not, however, come within the statute, as it is not the object, but only an incident or property, of the assignment, which credit is not. The length of the delay is immaterial. It might, under the present assignment, be for a few months only, or for one or two years. A credit of less than six months or a year would not materially affect the price of real estate. And the best security would be a mortgage on the land sold, which it would take fifteen months to foreclose, if not paid when due.

The question we have been considering has been decided differently in different states.

For the reasons stated we think the assignment void as to creditors, and that the judgment should be affirmed, with costs.

CHRISTIANCY and CAMPBELL JJ. concurred. MARTIN CH. J. did not sit in the case.