PETER B. IVES v. JOHN C. WILLIAMS.

*Landlord and tenant—Damage to tenant's occupancy.*

A tenant gave his landlord a written license to occupy as much of the premises as should be reasonably necessary in putting up an elevator. *Held,* that in suing the landlord for exceeding his privileges, the tenant could not show that the space to be occupied by him was marked out upon the floor; the license controlled, and the necessary space was a question for the jury.

In an action for damages brought by a tenant against his landlord, a declaration charging the latter with acts which hindered plaintiff's business will justify evidence that the conduct alleged caused him a loss of profits.

An objection to the form of a question, merely, cannot be raised for the first time on review.

The owner of a building, after renting a portion of it, put in an elevator, and in so doing interfered with his tenant's occupation, for which the tenant sued him in damages. *Held,* that the tenant could show that he was injured also by operations, in connection with the work, in other parts of the building than that which he occupied.

The parties to a lease do not, as matter of law, continue subject to its terms, where the tenant, against the landlord's will, holds over and continues in possession, and seeks to bind the landlord by provisions of the lease which have become inapplicable in consequence of changes in the premises.

Error to the Superior Court of Detroit. (Chipman, J.) Jan. 9.—Feb. 27.

CASE. Defendant brings error. Reversed.

*Atkinson & Atkinson* for appellant.

*Conely, Maybury & Lucking* for appellee.

GRAVES, C. J. April 30, 1880, the defendant leased to the plaintiff three rooms in the basement of the Williams block, in the city of Detroit, for the purpose of a saloon and restaurant, for the term of one year, and the plaintiff entered and occupied under such lease. A copy of the lease

appears below.* In the fall of the same year the defendant wished to put an elevator in the block, and he applied to Ives for permission to go upon the leased. premises and occupy.a portion for such purpose, and the desired license was given in writing, and a copy of it also appears below.† (See p. 104.) The defendant availed himself of the license, but disagreements arose and the plaintiff refused to go out at the expiration of the term specified in the lease, and defeated the defendant's legal proceedings to expel him, and the latter subsequently received rent. The plaintiff being still in, brought this action on the case in the summer of 1881 and complained that the defendant exceeded the license given him and otherwise injuriously disturbed the enjoyment of the premises, and the jury awarded $800 damages. The case comes up on exceptions taken at the trial.

---

* This lease, made this thirtieth day of April, in the year eighteen hundred and eighty, between John Constantine Williams, Sr., of the city of Detroit, county of Wayne, and state of Michigan, party of the first part, and Peter B. Ives, of the city of Detroit, county of Wayne. and state aforesaid, party of the second part, witnesseth : That said party of the first part, for good and valuable considerations, does hereby let and lease to the party of the second part, the following-described tenement, which is admitted by the party of the second part to be in good order and condition,—that is to say, the basement situate under stores numbered two and four (2) (4) corner of Michigan Grand Avenue and the Campus Martius, on lot No. two (2) subdivision of lots Nos. forty-five and forty-six (45) (46) in section number six (6) Governor and Judges' plan of the City of Detroit, Wayne County, and State of Michigan,—to be used as a saloon and restaurant, and for no other purpose whatever, together with all the appurtenances thereto belonging, for and during the term of one year next ensuing the thirtieth (30) day of April, 1880, fully to be complete and ended, yielding and paying therefor, during the continuance of this lease, to the said party of the first part and to his legal representatives the following rent, that is to say, the annual rent of six hundred dollars in manner as follows, to-wit, the sum of fifty dollars on the first days of May, June, July, August, September, October, November, December, January, February, March, and April, during the continuance of this lease. And for the purpose of securing the payment of said rent and the damages hereinafter specified, and the full performance of the covenants of this lease by the party of the second part, the said party of the second part does hereby. for good and valuable considerations, stipulate and agree that the party of the first part, and his legal representatives, shall have a lien, in the nature of a chattel mortgage, upon all the household stuff, furniture, goods. and chattels which said party of the second part may have on said premises or elsewhere, at any time during the continuance of this lease, *and till all rent and damages shall have been fully paid and satisfied*, and till the party of the second part shall surrender and vacate them ; and to that end the party of the second part does hereby bargain, sell, and mortgage all such household stuff, furniture, goods,

For the purpose of specifying the various actionable faults with which he charged the defendant, the plaintiff composed his declaration of five counts but he subsequently *nol. pros'd* the second. The first, fourth and fifth wholly rest on the ground that the right conferred by the license was exceeded, and the averments assume to explain in what the excess consisted. The statement is that more room was occupied; more noise and disturbance made; more injury done to the plaintiff's things; more hindrance and disturbance of the plaintiff's business caused, and more time consumed than was reasonably necessary, and the consequential injury is alleged to have been that the business of the plaintiff was interrupted and impaired for a longer space of time than was reasonably necessary, and the plaintiff's rooms

---

and chattels to the said party of the first part. And in case the rent or damages shall be at any time unpaid, or in case there shall be any other failure at any time to keep and perform the covenants and conditions of this lease by the party of the second part, and so often as rent or damages shall be unpaid, or there shall be such failure, it is agreed that the party of the first part, and his legal representatives, shall have the right and power to take possession of said household stuff, furniture, goods, and chattels as shall be sufficient to satisfy and pay all claim or claims for any rent or damages, or failure to perform the conditions and covenants of this lease, with the costs and expenses of the proceedings, and sell the same at public auction to the highest bidder; after giving at least six days' notice of time and place of sale, and out of the moneys arising from such sale or sales, to pay such claim or claims, with the costs and expenses of proceedings, rendering the overplus, if any there be, to the party of the second part.

And it is further covenanted and agreed, by and between the parties hereto, that any repairs, alterations, additions, or improvements desired to be made on said basement during the continuance of this lease by the party of the second part, at his own cost and expense, shall be made under the absolute control of the said party of the first part, and shall require the written consent of the said party of the first part, who shall direct when, where, how, and by whom the same shall be made, and not otherwise. And the party of the second part does hereby covenant and agree to pay said rent at the times aforesaid, and said damages, and otherwise keep and perform all the terms and conditions of this lease to be by said party of the second part kept and performed; and the party of the second part covenants and agrees, to and with the party of the first part, that said party of the second part shall not assign this lease, or in any way underlet said premises, or any part thereof, without the consent, in writing, of the party of the first part, first had and obtained, and that the party of the second part shall surrender and give up said premises at the expiration of said term in like good order and condition as when received; and if the said party of the second part shall fail to do so, he shall and will forfeit and pay to the first party the sum of two hundred dollars as stipulated damages hereby settled and agreed upon by the parties for each month and each and every part of a month, said party of the second

and the appurtenances were for a long time rendered less valuable, convenient and adequate than they would have been to the requirements of the plaintiff's business.

The third count is somewhat inartificial, but no objection was made to it and its meaning is perhaps sufficiently apparent. The ground of it seems to be that the defendant desired and intended to drive the plaintiff out of possession by certain means which are set forth : *First,* by particular acts of annoyance described as committed prior to the license; *second,* by going beyond what the license authorized ; *third,* in causing the steam to be turned off from the pipes at sundry times during the winter months of the winter of 1880 and 1881, and thereby leaving the premises occupied by the plaintiff so cold that business could not be transacted

---

part, or those claiming from or under him or them, shall so continue to live, or to surrender and yield, and shall hold or detain said premises beyond the term aforesaid. And it is further covenanted and agreed that no verbal agreement or understanding whatever shall have any validity or effect to change this lease, or to create a new lease of said premises, or to extend the term aforesaid, or to release or excuse the party of the second part from the obligation to surrender and yield up said premises punctually, as herein specified. And it is expressly understood and agreed, by and between the parties hereto, that the said party of the first part, or his legal representatives, reserves the right to enter on or into said demised premises during the continuance of this lease (during business hours) for the inspection of said premises or for the repair or alteration and supervision of any machinery therein contained.

Provided always, and these presents are upon this express condition, that if it shall so happen that the rent above reserved, or any part thereof, be behind or unpaid at the times and on the days above mentioned for the payment thereof, or in case of the non-performance of any of the covenants made by the said party of the second part at any of the times mentioned for the performance thereof, then and from henceforth it shall and may be lawful for the said party of the first part, his heirs or assigns, into the said demised premises, or any part thereof, in the name of the whole, to re-enter, and the same to have again, retain, repossess, and enjoy, and the said party of the second part, his executors, administrators, or assigns, and all others, tenants or occupiers of the said premises, or any part thereof, thereout, or therefrom, utterly to expel, put out, and remove; and from and after such re-entry made, this lease and every part thereof shall cease and be absolutely void, as it respects the covenants to be performed by the said party of the first part. And the said party of the first part, for his heirs and assigns, does hereby covenant and agree to and with the party of the second part, his heirs and assigns, that the party of the second part paying the rent above reserved in the manner aforesaid, and observing, keeping, and performing all and singular the covenants and agreements hereinbefore mentioned on his part to be kept and performed, shall and may peaceably and quietly have, hold, occupy, possess, and enjoy the said demised premises, with the appurtenances, for and during the said term, without any lawful let,

in them; *fourth*, by standing outside and close to the entrance of plaintiff's premises about the first of June, 1881, and endeavoring to intimidate people from entering by means of threats and by taking down the names of persons going in and out, or pretending to do so ; *fifth*, by maliciously annoying and vexing the plaintiff in June, 1881, by means of petty prosecutions under the pretense that the plaintiff had violated the provisions of the liquor law.

*First.* For the purpose of showing that the defendant took other room and more room than the license authorized, and thereby exceeded it, the plaintiff was allowed to swear that what room should be taken or might be taken was marked out on the floor at the time the license was given, and that the room actually taken was ten or twelve feet in excess.

The admission of this testimony was error. The privilege, as the written license left it, was to take what should be reasonably necessary and not simply an area whose *situs* and extent were already determined and marked out, and it entitled the defendant to take what should be reasonably necessary, whatever the extent and wherever located. The writing controlled and it was not competent for the plaintiff to testify that in fact the matter was not so left, but was

---

suit, hindrance, or molestation of the party of the first part, his heirs or assigns, or any other person or persons lawfully claiming said premises.

The words "and till all rent and damages have been fully paid and satisfied" inserted before the execution of these presents.

Witness the hands and seals of the parties, the day and year first above written.

JOHN CONSTANTINE WILLIAMS, Sr. [Seal.]
PETER B. IVES,                  [Seal.]

† Whereas, John C. Williams is about to place an elevator in the Williams block, corner of Michigan Grand avenue and Campus Martius, in Detroit.

And whereas, we are tenants in said building.

And whereas, said John C. Williams desires to place an elevator in said building.

Now, therefore, we agree that said Williams, personally and by agents, may, at all reasonable times, enter upon, possess, and occupy, with material, workmen, etc., so much of the premises occupied by us as his said tenants, as may be reasonable, necessary for the proper and convenient construction of said elevator.

Witness our hands and seals this November 26th, 1880.

M'LENNAN & CO.
P. B. IVES.

arbitrarily fixed. It was something to be practically ascertained; and when the jury were required to deal with the subject it was a question of fact on which they were bound to exercise their judgment. The principle is settled by *Stange v. Wilson* 17 Mich. 342. See also *Hoit v. Stratton Mills* 54 N. H. 109; *Heflin v. Bingham* 56 Ala. 566.

*Second.* The declaration was sufficient to admit evidence that the injurious conduct alleged caused the plaintiff a loss of profits. *Chandler v. Allison* 10 Mich. 460; *Allison v. Chandler* 11 Mich. 543; *Burrell v. N. Y. & Sag. Salt Co.* 14 Mich. 34; *Shaw v. Hoffman* 21 Mich. 151. The form of the question was not objected to and that ground cannot be taken here when it was not mentioned below.

*Third.* It is objected that the court erroneously admitted evidence that the defendant worked in other parts of the building on the elevator. The objection does not appear reasonable. The evidence was admissible. Whatever question there was related to the use which should be made of it. The preparation of the place and the putting the elevator up in it were operations which both parties foresaw and knew must naturally cause the plaintiff more or less disturbance, whether the workmen at any particular time were inside of the plaintiff's apartments or in some other, and it was not possible to explain the matter to the jury without referring to the work as a whole. Moreover the defendant's responsibility did not stop with such incidents as directly occurred in the plaintiff's rooms. It extended to blameworthy consequences felt there from blameworthy conduct elsewhere; the cause and effect being within the averments of the declaration. It was the business of the charge to guard against any misapplication of the testimony as well as to guard against all deviation from the causes of action as actually alleged.

*Fourth.* The term of the lease expired on the 30th day of April and no new agreement was made. But the plaintiff refused to quit; and contrary to the will of the defendant and notwithstanding the changed and unfavorable state of things persisted in staying on the premises. Under these

circumstances he contended for damages before the jury for occurrences between the end of the term on April 30th and the commencement of the suit.    And the learned judge laid it down as a legal proposition that although the lease ran out at the time mentioned, and although there was no new agreement, yet that the continuity of the relation between the parties was never broken and they remained as subject to all the provisions of the expired lease and all the provisions of the license after the 30th of April as before and that it made no difference whether the matter relied on as cause of damages arose before or after that date.

Whether in case a party holds over after the expiration of an express tenancy for years he becomes a tenant by sufferance merely, or a tenant subject to the provisions of the express lease, or a tenant upon still other terms, is not necessarily a pure question of law.   It is generally rather a question of evidence and depending upon states of fact which are more or less despotic in their tendency.

The facts may simply consist of a holding over by the tenant and an apparent acquiescence of the landlord, and where the inference or implication is a necessary one.  The case is then one of tacit consent on the part of both landlord and tenant to continue the original arrangement with all the rights and properties belonging to it.  *Beavan v. Delahay* 1 H. Bl. 5; *Doe v. Bell* 5 Term 471; *Digby v. Atkinson* 4 Camp. 275; *Salmon v. Dean* 5 E. L. & E. 107, 111; *De Young v. Buchanan* 10 Gill & J. 149.

Again, the state of fact may be that on the expiration of the lease the tenant will neither surrender the premises nor accede to the landlord's requirements; and in such cases it has been held that the landlord has an election to treat the tenant either as a trespasser or as a tenant for the year on the old terms.    *Conway v. Starkweather* 1 Denio 113; *Schuyler v. Smith* 51 N. Y. 309; *Tolle v. Orth* 75 Ind. 298.

But when the case is of such a nature that the facts plainly revolt against material provisions of the old lease; or when according to the evidence there is not only no right to infer the assent of the parties, but positive proof that the land-

lord unqualifiedly dissents, there is no authority for holding that the parties are nevertheless subject as matter of law to the old provisions. *Waring v. King* 8 M. & W. 571; *Mayor of Thetford v. Tyler* 8 Q. B. 95; *Smith v. Egging- ton* L. R. 9 C. P. 145; *Kelly v. Patterrson* L. R. 9 C. P. 681; *Hyatt v. Griffiths* 33 E. L. & E. 75; *Diller v. Roberts* 13 S. & R. 60.

The contrary view would lead to great absurdity and would enable a tenant by an easy process to dictate terms to his landlord. Now in the case before us the state of the property had undergone very substantial change and many important provisions of the lease had become inappropriate, and the defendant, the lessor, was opposed to the further continuance of the tenancy and objected to its being forced upon him. The plaintiff, the tenant, resolved to hold on. But he could not do so and still bind the defendant to the old and inapplicable provisions and claim damages under them. That would be taking advantage of his own wrong. In choosing to hold over under the circumstances he obliged himself to be contented with such accommodations as were there and to submit to whatever inconveniences should occur in connection with the completion of the elevator.

*Fifth.* The case was given to the jury on an assumption that they might charge the defendant for malicious attempts to expel the plaintiff. But no evidence is found applicable to the averment framed on that point.

As a consequence of the foregoing views the judgment should be reversed with costs and a new trial granted.

COOLEY and MARSTON, JJ. concurred.