HENRY C. CUTLER ET AL., APPELLEES, V. N. H. MEEKER ET AL., APPELLANTS.

FILED APRIL 21, 1904.   No. 13,535.

1. **Decedent's Estate: LANDS UNDER CONTRACT OF PURCHASE.** The interest of a vendee in possession of real estate under a contract of sale, part of the purchase price of the land having been paid, at his death, descends to his heirs, and does not pass to his administrator. It is alienable, descendible and devisable in like manner as if it were real estate held by a legal title.

2. **Action to Quiet Title: DOWER: TRUSTS.** Where, by the mutual consent of the heirs and the widow of a deceased vendee in possession under contract of sale of school lands from the state of Nebraska, the equitable interest therein has been treated as if it were real estate of which the decedent died seized, and dower therein has been assigned to the widow, a deed issued to her in her own name by the state for the portion of the land assigned to her as dower, upon her payment of the balance due *pro tanto* under the contract, creates no new right in her as against the heirs; the title she thereby acquired inures to their benefit and, in equity, she took the legal title only as trustee for them.

APPEAL from the district court for Cass county: PAUL JESSEN, JUDGE. *Affirmed.*

*Byron Clark* and *Samuel M. Chapman,* for appellants.

*C. S. Polk* and *O. B. Polk, contra.*

LETTON, C.

Martin B. Cutler, a resident of Cass county, Nebraska, died on the 29th day of March, 1885, intestate, leaving a widow, Gertrude Cutler, and two sons, Henry C. Cutler and George H. Cutler, his only heirs. Prior to his death, Martin B. Cutler had purchased from the state of Nebraska 520 acres of school lands in Cass county, and had made the first payment of one-tenth upon the principal, and also part of the interest upon the deferred payment, the balance of the principal not being due until 20 years from date of purchase. Under the contract he was bound to pay the interest at 6 per cent. per annum anually, in advance, upon the deferred payments, until the principal became due. At the time he died, Cutler was in possession of the 520 acres of land referred to, and also was seized in fee of a 10 acre tract of timber land adjoining the same. After his death, letters of administration were granted in the probate court of Cass county to his widow and his oldest son, as joint administrators, upon a petition for administration signed by Gertrude Cutler and George H. Cutler, which alleged, among other things, that Martin B. Cutler died seized and possessed of real and personal estate, consisting of farm lands, live stock and implements. On the 11th day of July, 1885, an inventory was filed in the county court of Cass county, signed and sworn to by George H. Cutler and Gertrude Cutler, describing the real estate as in the petition and setting forth its value as if held in fee.

On the 9th day of September, 1885, the petition of Gertrude Cutler was presented to said county court, alleging

that Martin B. Cutler died seized of real estate, described as in the petition. That the heirs, and the only persons interested in said lands, are George H. Cutler and Henry C. Cutler. That she is entitled to dower in all of said lands; and her right thereto is not disputed by the said heirs or any person claiming under them or either of them. On the next day, the court rendered a decree, after finding that said Gertrude Cutler is the widow of the deceased, and ordering that she be endowed of one-third part of the premises described in the petition of said Gertrude Cutler, and appointing commissioners to assign dower. The commissioners appointed to assign dower duly acted, and made their report setting apart the 200 acres of land in controversy to Gertrude Cutler as her dower in the estate of Martin B. Cutler. On the 23d day of December, 1886, a decree of confirmation of the report of the commissioners was rendered by the county court, and it was "ordered that said Getrude Cutler have the use and possession of the land so assigned during her life."

On the 27th day of June, 1887, the administrators, Gertrude Cutler and George H. Cutler, having filed their final report, the county court, after due notice given, found that the residue of personal property in the hands of the administrators was $4,106.40, and found further that the deceased died seized of all the real estate heretofore mentioned; that he left surviving him Gertrude Cutler, his widow, George H. Cutler and Henry C. Cutler his only heirs; and ordered that the residue of the personal estate be assigned to the widow and the heirs, one-third part to each, and that the real estate be assigned to the two sons, to each an undivided one-half, subject, however, to the assigned dower rights of Gertrude Cutler. After the assignment of dower had been made to the widow, the remaining land was divided between the two sons by agreement, and each took possession of his share, the widow taking possession of the land assigned to her as dower. Each of the sons paid the balance remaining

due to the state of Nebraska upon the respective tracts
occupied by them, and Gertrude Cutler kept up the inter-
est payments and finally made final payment to the state
of Nebraska upon the 200 acres of land occupied by her.
A deed was issued to her in her own name, as grantee, by
the state of Nebraska for said lands, dated on the 25th
day of October, 1897.   Gertrude Cutler afterwards died,
leaving a last will and testament by which the 200 acres
of land were devised to the defendants.   Henry C. Cutler
and George H. Cutler brought an action in the district
court for Cass county, setting forth the facts substan-
tially as above, and praying that a judgment be entered
finding that they are the owners of the 200 acres of land;
that Gertrude Cutler, by the conveyance which she re-
ceived from the state of Nebraska, took the legal title
to the land in trust for their use, and asking that title
be quieted in them as against her devisees, the defendants.
The defendants, claiming under the will of Gertrude Cut-
ler, asserted that, since Martin B. Cutler was 2 years in
default at the time of his death, he had forfeited his right
to the contract of purchase of the land; that the land was
divided and that, by the subsequent payment by Gertrude
Cutler of the full amount due upon said land and the
conveyance of the same to her by the state of Nebraska,
she took and received a perfect title in fee to the premises.
They further claim by adverse possession.

The facts in this case are virtually undisputed. At the
time of the death of Martin B. Cutler, he was possessed
of an equitable interest in the tract of land purchased by
him from the state of Nebraska:  Under the law in this
state, his widow had no right to dower in this equitable
estate.  *Crawl v. Harrington,* 33 Neb. 107; *Hall v. Crabb,*
56 Neb. 392.   He was not seized in fee of the premises,
but had merely an equitable estate, subject to be defeated
by forfeiture for nonpayment of interest at any time.
At the time of the final settlement of Cutler's estate, there
was in the hands of the administrators the sum of $4,106.-
40.   There was afterwards paid by the heirs and Gertrude

Cutler, severally, to the state of Nebraska, in full for the balance remaining due upon the whole 520 acres of land, $3,624.14, so that the whole amount necessary to be paid to the state, in order to procure a perfect title in fee simple to the whole tract of land, was in the hands of the administrators before final settlement of the estate, and might have been applied for that purpose. This was not done, but all parties interested in the estate elected to treat the equitable interest in the lands as if the decedent had died seized in fee of the same.

As to the contention of defendants, that the interest of Martin B. Cutler was forfeited at the time of his death, and that the state recognized Mrs. Cutler as the owner of the title, it is clear from the evidence that the state always recognized the title of Martin B. Cutler, and did, in fact, waive the forfeiture. No resale was ever had to Mrs. Cutler, and all the rights that the state recognized or gave her were based upon the contract with her husband. The deed which was issued to her was issued after an abstract of the probate proceedings, whereby the 200 acres were set apart to her had been sent to the land department of the state, and was made in accordance therewith. The receipts given upon the payment of interest show that the land was "sold to M. B. Cutler," and the letters and proceedings of the commissioner of public lands and buildings show that the state authorities executed the deed to her, believing that she had the right to complete the contract of purchase of Martin B. Cutler, and to receive a deed to the premises by reason of the same being awarded to her, as they mistakenly thought, by a decree of court.

Whatever rights, then, Mrs. Cutler had to the land she acquired through her husband's contract, and not adversely to it, and the right of her devisees, must be measured by that standard.

What was the actual and true interest of the heirs and the widow in the real estate at the death of Martin B. Cutler? Was it a mere personal interest that went to the

administrator or did it descend to the heirs? Is it of the
nature of real or personal estate? If it descended to the
heirs upon the death of Martin B. Cutler, they alone had
the right to receive the deed from the state of Nebraska.
In an early case in the supreme court of the United States
this question was considered and the court say: Where
an agreement is made to sell land, upon the execution of
notes for the price and the title-bond, the vendor holds
the legal title as trustee for the vendee, and the vendee
is a trustee for the vendor as to the purchase money. "The
seller under such circumstances has a vendor's lien. The
equitable estate of the vendee is alienable, descendible and
devisable in like manner as real estate held by a legal
title. The securities for the purchase money are person-
alty, and in the event of the death of the vendor, they go
to his personal representatives." *Lewis v. Hawkins,* 23
Wall. (U. S.) 119, 126. See also *Boone v. Chiles,* 10 Pet.
(U. S.) *177, *225; 2 Story, Equity Jurisprudence (13th
ed.), sec. 1212; *Hardin v. Boyd,* 5 Sup. Ct. Rep. 771; *Dor-
sey v. Hall,* 7 Neb. 460; 1 Dembitz, Land Titles, sec. 28;
2 Jones, Liens (2d ed.), sec. 1108, and cases cited.

This rule is recognized in the statutes of this state.
Section 329, chapter 23, Compiled Statutes (Annotated
Statutes, 5178), provides that, where any person who is
bound by any contract to convey real estate shall die be-
fore making the conveyance, the person entitled thereto
may bring specific performance to enforce the performance
of the contract by the heirs, devisees or personal represent-
atives of the deceased party who made the contract; and
section 335, chapter 23, Compiled Statutes (Annotated
Statutes, 5184), provides that, if the person to whom the
conveyance was to be made should die before the com-
mencement of proceedings or before the conveyance is
completed, any person who would have been entitled to the
estate under him as heir, devisee or otherwise, in case the
conveyance had been made according to the terms of the
contract, or the executor or administrator of such de-
ceased person for the benefit of the person who was entitled

to it, may commence such proceedings or may prosecute the same if already commenced, and the conveyance shall thereupon be so made as to vest the estate in the same person who would have been so entitled to it or in the executor or administrator for his benefit.

Also sections 94 to 98 inclusive of chapter 23, Compiled Statutes (Annotated Statutes, 4968-4972), provide that, if a deceased person at the time of his death was possessed of a contract for the purchase of land, his interest in such land and under such contract may be sold on the application of his executor or administrator in the same manner as if he had died seized of such land, and provide for proceedings by the administrator or executor whereby such sale may be made.

In *Hovorka v. Havlik*, 68 Neb. 14, it was contended by the plaintiff in error that a contract for the purchase of school lands from the state is personal property, the title to which passes to the administrator, and that he has the right to sell it the same as other personal property of the deceased. But this court say, after citing the statutory provisions:

"This statute, as we understand, was borrowed from the state of Michigan, and had as early as 1863 received a construction by the supreme court of that state by which it was held that 'under our probate system an administrator can not sell the interest of the estate in an executory contract for the purchase of lands, except as real estate and after license.' *Baxter v. Robinson*, 11 Mich 519. But even in the absence of this statute and of its construction by the supreme court of Michigan, we can not believe that it was the intention of the legislature that valuable landed estates, held by the decedent under a contract -of purchase, should pass to the administrator, to be disposed of by him in the same manner as the goods and chattels coming to his possession. There are numerous cases where valuable farms and other property are held under contract of purchase. The decedent and his family may have lived upon the property for years; the

purchase price may have been mostly paid; and it would be so unusual and unjust to allow the administrator to claim title to this property, and a right to dispose of it as personalty coming to his hands, without a showing that it was necessary in the settlement of the estate, that a statute authorizing such a procedure should be the only authority of this court to declare it to be the law."

"An equitable right to have a conveyance of land in fee, an equity of redemption, goes to the heir as land held in fee, though the statute of descents may only speak of land of which the decedent died seized." 1 Dembitz, Land Titles, sec. 28.

The heirs of a vendee in possession under a contract of sale of real estate are not possessed of "an estate of inheritance" at common law, hence, as we have seen, the widow of the deceased is not legally entitled to be endowed thereof. The right of their ancestor is merely in equity and though liable to be defeated by nonperformance of the contract on his part and consequent forfeiture, if the terms of the contract so provide, still it is in equity considered as real estate and, on his death, descends to his heirs.

In what position then do the defendants stand? Upon the death of Martin B. Cutler, the equitable interest in the lands of which he was possessed under the contract of purchase descended to his sons.

Gertrude Cutler, by the assent of the heirs, procured the 200 acres of land in controversy to be set apart to her as her dower, all parties treating the equitable estate as a legal one of which Cutler died seized. She entered into possession and paid out upon the contract, under the rights given thereby to Martin B. Cutler. While she took the title to the land in her own name, she could not assert it as against the true owners, it inured to their benefit and, though nominally the holder in fee, in equity, she held the legal title only as a trustee for them, and they were entitled to have their title quieted as against her devisees.

The judgment of the district court quieting the title in the heirs is correct and should be affirmed.

DUFFIE and KIRKPATRICK, CC., concur.

By the Court: For the reasons state in the foregoing opinion, the judgment of the district court is

AFFIRMED.