MARY LOUISE CARTER, *Appellant*, v. ZOAH L. GILBERT, Administratrix, *Appellee*.

Division B.

Opinion filed May 13, 1930.

*F. W. Schmitz,* for Appellant;

*Shipp, Evans & Kline,* for Appellee.

BUFORD, J.—In this case one Gilbert entered into a contract with one Merrick for the purchase of certain real estate by Gilbert from Merrick. While the contract remained executory Gilbert died. Appellee became administratrix of the estate of Gilbert. As a part of the estate she took into her possession the executory contract. Thereafter the appellee, as administratrix, assigned the contract by a separate contract under seal with full warranties of title embraced therein, to the appellant and in consideration therefor received some cash and a mortgage to secure the balance of the consideration for the assignment of the contract.

There was default in the payment of the debt secured by the mortgage. Appellee filed suit to foreclose the mortgage. Appellant attempted to defend upon the theory that the administratrix was without authority to assign the contract and that, therefore, there was a failure of consideration for which the mortgage was given. The decree was in favor of the complainant in the court below and the defendant appealed.

The contract entered into between Merrick and Gilbert was an executory contract and was a chose in action in the hands and possession of Gilbert at the time of his death.

In 11 R. C. L. 347 the author says:

"An executor or administrator becomes for most purposes the owner of the legal title to the goods of his testator, and may dispose of them as if they were his own, except that he cannot bequeath them, nor can they be taken on execution for his debt. His powers

·with regard to the sale or pledge of assets are much broader than those of a trustee, since normally he receives the actual title and is presumed to have the right to transfer it. At common law and in most jurisdictions today, he has absolute power of disposal over the whole personal property including choses in action.''

The record shows that when the contract for the purchase was assigned and the mortgage given to secure the balance of the payment for such assignment, the appellant went into possession of the property as the result of such transaction and that she has at all times remained in possession of the property.

The law is well settled in this State that:

''In foreclosure proceedings against a mortgagor in possession under a deed from the mortgagee with full warranty of title, the mortgagor cannot set up an outstanding title or breach of covenants as a defense to the bill to foreclose the mortgage given to secure the purchase money when there has been no actual or constructive eviction of the mortgagor or fraud or insolvency on the part of the mortgagee.''

See Paine v. Kemp, 77 Fla. 531, 82 So. R. 53, and cases there cited. Brewster v. Gage Advance Opinions U. S. Supreme Court Jan. 20, 1930, 74 Law Ed. 183.

Such rule is applicable to the instant case and the attempted defense of total failure of consideration was not available to the defendant in foreclosure.

There were other assignments of error, all of which we have considered, but no question appears to be raised by such assignments of error which has not been hereto-

fore settled by decisions of this Court adversely to the contentions of the appellant.

The decree appealed from should be affirmed and it is so ordered.

Affirmed.

TERRELL, C. J., AND WHITFIELD, J., concur.

ELLIS, J., concurs in the conclusion reached.

STRUM AND BROWN, J. J., dissent in part.

BROWN, J., dissenting in part.

I very much doubt the authority of Mrs. Gilbert, as executrix of the estate of her deceased husband, to assign the contract of purchase of the real estate in question. This contract was executed on November 1, 1922, by and between George E. Merrick and wife as parties of the first part and Charles H. Gilbert as party of the second part. By this contract, Merrick agreed to sell and convey to Gilbert a certain house and lot for $8,300.00, $705.47 being paid in cash and the balance of $7,594.53 payable at the rate of $60.00 per month. The contract contained the usual forfeiture clause in case of default by the purchaser.

In Felt v. Moss, 80 Fla. 154, 85 So. R. 656, it was held by this Court that:

"From the time the owner of land enters into a binding contract for its sale he holds the same in trust for the purchaser and the latter becomes a trustee of the purchase money for the vendor, and being thus in equity the owner, the vendee must bear any loss which may happen and is entitled to any benefit which may accrue to such land in the interim between the agreement and the conveyance thereof to such vendee."

In the opinion in the above cited case, the case of Insurance Co. of North America v. Erickson, 50 Fla. 419, 39 So. R. 495 is cited. See also DeHuy v. Osborne, 96 Fla. 435, 118 So. R. 161; 39 Cyc. 1611-12.

Section 5629, Comp. Gen. Laws, reads as follows:

"Real estate shall be liable for the debts of a decedent but shall descend to the heir or devisee and remain in his possession until the executor or administrator shall take possession of the same under the order of the Court, or until the same shall be sold under execution by any creditor of the decedent."

Although the cash payment was small, it appears that Gilbert became equitable owner of the real estate in question, under this contract, thereby making the contract something more than a mere ordinary chose in action. It evidenced the purchaser's equitable title in the property. The learned Chancellor, in his order overruling the exceptions to the Master's report, stated:

"The court further finds that, as a matter of law, an executory contract for the conveyance of real estate may or may not create a freehold estate in the land described in the contract, depending upon whether or not the purchaser is given and retains possession of the land under the contract. In this case, it does not appear by the pleadings or the proof that Charles Harry Gilbert Sr., now deceased, who appears to have purchased the land in question under an executory contract, ever went into actual possession of the property and made the same his homestead, thereby creating an estate of freehold which could only pass by deed. The pleadings and proof are silent upon this and other points necessary to sustain the contention of the de-

fendant. It also appears by the evidence that the assigning of the contract by complainant to the defendant was approved by the county judge and that no objection was made by defendant to the transaction until after the filing of complainant's bill."

It will be noted, however, that in the case of Insurance Co. of North America, v. Erickson, it was stated in the opinion that the retention of possession of the land by the vendor under the contract of sale did not make any material difference in the vendor's status, and did not render the transaction any the less an unqualified sale of the property on his part and purchase thereof by his vendee; that the vendor was no longer the sole and unconditional owner of the property, but that the contract converted him into a trustee holding the legal title in trust for the vendee as security for the payment of the agreed purchase price.

While some of the cases holding that the interest of the purchaser under a contract of sale, part of the price of the land having been paid before his death, descends to his heirs, as being in the nature of real estate, are grounded not only upon the part payment of the purchase money, but also upon the fact that he had gone into actual possession of the property purchased, yet the majority of cases do not appear to attach any particular importance to this matter of the purchaser having gone into actual possession. However, this point becomes important in determining whether or not the widow is entitled to dower in property thus purchased by her deceased husband in his life time, inasmuch as our statute provides that the widow shall have dower rights in "all the lands, tenements and hereditaments of which her husband died seized and possessed." See Blount v. Bost, 121 So. R. 472, 97 Fla. 449.

It also is quite generally held that where the vendor dies before the payment of the purchase money and the

execution of the conveyance, the securities for the purchase money are personalty in the hands of the personal representative of the vendor, who may enforce the contract and collect the purchase money (23 C. J., 1145; Lewis v. Hawkins, 23 Wall. 119, 23 Law Ed. 113), and execute the deed. Section 5643, Comp. Gen. Laws of 1927.

Although the cases in which the question has arisen are not very numerous, it seems to be generally held that the interest of the purchaser in an executory contract for the purchase of real estate will be considered in equity as realty and not personalty, and consequently will pass at the purchaser's death to his heirs or devisees in the same manner as land of which he holds the legal title, even though all the purchase money had not been paid prior to the vendee's death. 13. C. J., 1145; and note to the case of Cutler v. Meeker (71 Neb. 732), 8 Am. and Eng. Anno. Cas., 951, 954.

In Champion v. Brown, 6 Johns Ch. (N. Y.) 398, the administrator of the purchaser under an executory contract for the sale of realty assigned the interest of the decedent's estate in the contract. In an action brought by the vendor to compel the assignee to perform the contract, the court declared that it was unable to perceive by what authority the administrator had assigned the contract, because in equity the land contracted for has descended to the heirs as real estate.

In the case of Lewis v. Hawkins, *supra*, it was said in the opinion by Mr. Justice SWAYNE that:

"Upon the execution of the notes and the title bond between Lewis and Hawkins, Lewis held the legal title as trustee for Hawkins; and Hawkins was a trustee for Lewis as to the purchase money. Hawkins was *cestui que* trust as to the former and Lewis as to

the latter. 1 Story Eq., Sec. 789; 2 Story Eq., Sec. 1212; 1 Sudg. Vend. 175; Swartwout v. Burr, 1 Barb. 499; Champion v. Brown, 6 Johns Ch. 402. The seller under such circumstances has a vendor's lien, 'which is certainly not impaired by withholding the conveyance.' The equitable estate of the vendee is alienable. descendible and devisable in like manner as real estate held by a legal title. The securities for the purchase money are personalty, and in the event of the death of the vendor, go to his personal representative. 2 Story Eq., Sec. 1212. It does not appear that the title bond authorized Hawkins to take possession, or that he did so. If there were no such authority, and he entered into possession, he held as a licensee or tenant at will. Suffern v. Townsend, 9 Johns 35; Dolittle v. Eddy, 7 Barb. 75. The vendee cannot in such cases dispute the title of his vendor any more than the lessee can dispute that of his lessor. Whiteside v. Jackson, 1 Wend. 422; Hamilton v. Taylor, 1 Litt. Sel. Cas. 444. Any other person coming into possession under the vendee, either with his consent or as an intruder, is bound by a like estoppel. Jackson v. Walker, 7 Cow. 637. Hamiter, having bought and assumed the payment of the purchase money stipulated to be paid by Hawkins, took the property subject to the same liabilities, legal and equitable, to which it was subject in the hands of Hawkins.''

It is true, Mrs. Gilbert, after the death of her husband, was appointed administratrix of his estate and also guardian for their two minor children, and it is also true that she filed a complete history of this transaction, in the form of annual reports, both in her capacity as administratrix and in her capacity as guardian, in the County Judge's court, and that these reports were approved by

the County Judge. These reports show that Charles H. Gilbert left no property, outside of ordinary clothing and household goods, except his equity in this real estate under the contract of purchase above mentioned, on which he had made total payments up to the time of his death of $850.47, leaving a balance of $7,449.53 due on the contract, and that he was delinquent in payments in the amount of $185.64; that Mrs. Gilbert, out of certain insurance monies which came to her in her personal right and also out of monies which she earned while working as a nurse, had paid an additional $1,860.00 on the contract, when in July, 1925, she sold and assigned the contract to Mary Louise Carter for $18,500.00, receiving $6,000.00 in cash and the purchaser assuming the balance due the vendor and giving to Mrs. Gilbert as administratrix a mortgage and notes for the balance, $4,770.27, which mortgage this suit was brought to foreclose. The said administratrix used the $6,000.00 thus received in the purchase of a lot and the erection of a home for herself and minor children, giving a mortgage for $3000.00 for the balance, on which she had paid $800.00 out of her personal earnings. There is no question that all of her actions were done in good faith and for a widow left with two minor children and an equity of only $850.00 in property purchased by her husband this undoubtedly was a very creditable showing on her part. On her report as administratrix, the County Judge stated that no objection had been filed and that the account appeared to be just and correct and that the conduct of the estate set forth had been for the best interest thereof, and said account was therefore allowed and approved. On July 22, 1927, on Mrs. Gilbert's report as guardian, the County Judge found that she had acted to the best interest of the estate of the minors, and her act was allowed and approved, and the prayer of Mrs. Gilbert contained in said report,

that she be allowed and empowered as such guardian to give a quit-claim deed covering the property sold to Mary Louise Carter upon the payment of the balance due, was granted.

While this act of the County Judge could not cure the failure of Mrs. Gilbert to take those steps which are required by the statute to authorize an administratrix or guardian to dispose of real estate, or an interest therein, belonging to the estate or to the heirs or wards, yet it does show that Mrs. Gilbert was acting in good faith and that no objection was made by Mary Louise Carter, or any one else, to any lack of authority on her part to assign the contract of purchase until she sought to foreclose the mortgage given to secure the purchase price. It also appears that Mary Louise Carter went into possession of the house and lot, after the assignment to her of the contract by Mrs. Gilbert, in July 1925, and remained in possession up to the time of the filing of the foreclosure suit in 1927, during which period she had paid only $100.00 in addition to what she had paid at the time of the purchase. There is no allegation nor evidence to the effect that Gilbert's vendor, Merrick, had refused to recognize the assignment or to carry out the contract thus assigned. Under these circumstances I am inclined to think that the doctrine laid down in Paine v. Kemp, 77 Fla. 531, 82 So. R. 553, quoted from in the opinion of Mr. Justice BUFORD, is applicable. See also Latin-Am. Bank v. Rogers, 87 Fla. 147, 99 So. R. 546, in which it was said that the vendee in possession under an executory contract to purchase land may not dispute the vendor's title nor set up as a defense any outstanding title acquired by him, the vendee, during the continuance of such possession.

In the case of Cutler v. Meeker, *supra*, it was said by the Supreme Court of Nebraska that:

"The heirs of a vendee in possession under a contract of sale of real estate are not possessed of 'an estate of inheritance,' at common law; hence, as we have seen, the widow of the deceased is not legally entitled to be endowed thereof. The right of their ancestor is merely in equity, and though liable to be defeated by non-performance of the contract on his part and consequent forfeiture, if the terms of the contract so provide, still it is in equity considered as real estate, and on his death descends to his heirs."

In this case, not only was the right of the decedent merely an equity liable to be defeated by non-performance and consequent forfeiture, but Mr. Gilbert was in default at the time of his death, and had it not been for the efforts of his administratrix, and contributions made out of her personal funds, this property would doubtless have been lost to the estate entirely. It is a serious question whether, under these circumstances, where an administratrix with her own funds protects the contract of purchase made by her intestate, she does not thereby acquire a right in equity to assign and dispose of such contract when it can be done to the best interest of the estate and without prejudice to the rights of heirs or creditors. At least the assignee and purchaser of such contract is hardly in a position to question the validity of such an assignment in the absence of any showing that the original vendor has refused or threatened to refuse to recognize such assignment as binding upon him.

For these reasons I concur in the judgment of affirmance.

STRUM, J., concurs.